David V. LONGENECKER, Appellee,

v.

GENERAL MOTORS CORPORATION, a corporation, Appellant.

Sharon LONGENECKER, Appellee,

v.

GENERAL MOTORS CORPORATION, Appellant.

No. 77–2724.

United States Court of Appeals, Ninth Circuit.

April 9, 1979.

Rehearing Denied May 14, 1979.

Jack R. White, Hill, Farrer & Burrill, Jack R. White, Los Angeles, Cal., for petitioner-appellant.

Gilbert E. Andrews, Myron C. Baum, Libero Martinelli, Jr., Washington, D. C., for respondent-appellee.

Before WALLACE and TANG, Circuit Judges, and TURRENTINE, District Judge.*

* The Honorable Howard B. Turrentine, United States District Judge, for the Southern District of California, sitting by designation.

Philip D. Chadsey, Charles F. Adams, Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for appellant.

James W. Lock, Gresham, Or., for appellees.

Before WRIGHT and GOODWIN, Circuit Judges, and THOMPSON,* District Judge.

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

GOODWIN, Circuit Judge:

These consolidated appeals present common questions for review. A jury found General Motors liable, on the theory of a dangerous defect in the design and manufacture of a 1966 Chevrolet Impala passenger car, for injuries sustained by the plaintiff driver of a Volkswagen with which the Impala collided, and for plaintiff's wife's loss of consortium.

For reasons disputed by the parties, Lustre, the driver of the Impala, lost control of the car. The Impala traveled 145 feet across the grass median of the highway and struck a concrete abutment. The collision with the abutment sent the car into an aerial corkscrew, and it landed on top of plaintiff's Volkswagen, approaching from the other direction. The Impala came to rest on its roof, 285 feet from the point where it left its own side of the road.

Plaintiffs contended that the loss of control was caused by a failure of the engine mount of Lustre's Chevrolet. The flaw supposedly produced a sudden slippage of the engine, causing the throttle to be held open and the engine to "race" at a high rate of speed.

There was little direct evidence to support any theory of the accident. The car itself was not available for inspection or testing. It was destroyed by a scrap dealer before anyone realized it might have evidentiary value.

Plaintiff called two experts who testified that the car could not have traveled as far as it did with such obvious force unless it was under unusual power from the engine after Lustre lost control. Evidence from GM's experts, based on tests, tended to cast doubt on plaintiff's version of the facts.

Plaintiff points to other evidence. There were exhibits and testimony about earth torn up by Lustre's car on the grass median, supposedly indicating higher speed than Lustre had maintained before the engine mounts separated. Witnesses who had stopped to help testified that the Impala's engine was "screaming". Exhibits and police testimony supported the argument that

no obstacle had impeded the road where Lustre was driving.

1. *Legal Sufficiency of the Evidence*

Defendant assigns error to the district court's reference to Oregon law, rather than "federal" law, in ruling that there was enough evidence for the case to go to the jury. *Compare Safeway Stores v. Fannon,* 308 F.2d 94, 97 (9th Cir. 1962) (question held one of federal law), *with Union Pacific Railroad Co. v. Hormaechea,* 418 F.2d 990, 994 (9th Cir. 1969) (issue assumed, without discussion, to be one of state law).

■ The two standards refer to "substantial evidence" to permit a case to go the jury. In either the state or federal court a fact issue must go to the jury unless only one reasonable inference can be drawn from the evidence. *Brady v. Southern Railway Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Rosa v. Briggs,* 200 Or. 450, 455, 266 P.2d 427 (1954). In neither jurisdiction may the court weigh the credibility of the witnesses. *Brady v. Southern Railway Co.,* 320 U.S. at 479–80, 64 S.Ct. 232; *Godell v. Johnson,* 244 Or. 587, 590–91, 418 P.2d 505 (1966). Because the two standards are functionally identical, the question of which to apply is moot. *Dick v. New York Life Insurance Co.,* 359 U.S. 437, 444–45, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959).

■ Neither side presented direct evidence concerning the engine mounts in question. Defendant argues that plaintiff failed to provide evidence that the engine could shift far enough to open the throttle. But one expert testified, based on his experience in the development of the engine design, and his study of the observations of others at the scene of the accident, that he believed the engine could slide that far forward. The question was one for the jury.

The expert testimony was in conflict, but there was sufficient evidence from which a jury could have found that Lustre, an alert, 74-year-old, experienced driver, was engaged in no unusual maneuver when his Impala suddenly went out of control because of a failure of the engine mounting.

The evidence made out a jury question on the cause of the accident.

### 2. Admission and Use of Recall Letter

Some two months after the accident, Lustre received a recall letter from GM about the need to attach a restraint to his engine to limit "engine lift". Over GM's objection, the district court received this letter into evidence. GM contends that the letter has little relevance because it mentions mount separation occurring only under driving conditions which were not shown to have existed in this case. The letter's prejudicial effect, GM claims, outweighs any probative value.

■ GM's objection, in effect, invokes Fed.R.Evid. 403. The Rule 403 weighing process is primarily for the district court to perform. Trial judges are better able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them in balancing probative value against prejudice. *United States v. Radlick*, 581 F.2d 225, 229 (9th Cir. 1978); *United States v. Juarez*, 561 F.2d 65, 71 (7th Cir. 1977).

■ The recall letter recited that engine-mount separation would occur, if at all, during rapid acceleration. Lustre was not accelerating when the mounts in his car allegedly separated. But the letter was relevant evidence that there was a flaw in the mounts, and the district court did not abuse its discretion in receiving the letter.

■ Nor was the district court's instruction about the letter erroneous. The judge did not allow the jury to consider the letter until he had announced himself satisfied that plaintiff had made a prima facie case. He then instructed the jury that the letter was not an admission, but that it should be considered "for what you think it is worth." The instruction contained nothing prejudicial to GM. Fed.R.Civ.P. 61. It was free from error.

At the trial, GM did not object to the admission of the recall letter under Fed.R. Evid. 407.[1] We need not decide, therefore, whether a recall letter is the sort of "subsequent remedial measure" covered by Rule 407. We likewise do not reach the question whether "culpable conduct" for purposes of the rule includes a manufacturer's strict product liability. *Cf. Robbins v. Farmers Union Grain Terminal Ass'n*, 552 F.2d 788, 793 (8th Cir. 1977).

### 3. Impeachment of Defendant's Expert

■ Over defendant's objection, the trial judge admitted a self-impeaching statement made in connection with an earlier case by GM's expert, Johnson. In a letter, Johnson had stated that faulty Chevrolet engine mounts were a possible cause of the earlier accident. GM contends that the letter was inadmissible because it was irrelevant and related to a collateral matter.

The earlier accident, GM says, involved a different model Chevrolet with a different style engine. But the model year of the car, and, more important, the type of engine mounts, were the same. Again, relevance was within the trial court's discretion, *United States v. Radlick, supra*, and there was no abuse of discretion in admitting the impeachment letter.

In support of its argument, GM cites *Shanahan v. Southern Pacific Co.*, 188 F.2d 564 (9th Cir. 1951). In *Shanahan*, the trial court struck as irrelevant evidence that a railroad signal was broken some time before the accident, because plaintiff did not show that the signal was in the same condition at the time of the accident. But GM does not contend that the engine mount's condition changed between the time Lustre bought the car and the time of the accident. Indeed, under *Russell v. Ford Motor Co.*, 281 Or. 587, 596–98, 575 P.2d 1383 (1978), there is a presumption that an auto part that normally would not be altered, replaced, or serviced remains in the condition

---

1. Fed.R.Evid. 407 states in relevant part:
    "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. * * *"

in which it was purchased. *Compare Quirk v. Ross*, 257 Or. 80, 476 P.2d 559 (1970) (auto brakes cannot be presumed to be in original condition after 39,500 miles).

The engine mounts, like the axle assembly at issue in *Russell*, are normally not changed, repaired, or replaced during the car's life. GM's citation to *Shanahan* is inapposite; Johnson's earlier statement of opinion on the engine mounts was neither irrelevant nor collateral.

### 4. Inference of Defect

The district judge instructed the jury that it could find a defect by proof of (a) a defect in manufacture; (b) a defect in design; (c) a "failure to perform safely under circumstances in which from common knowledge the average user reasonably could have expected the product to perform safely." The last part of the instruction, GM admits, is a correct statement of the rule from *Heaton v. Ford Motor Co.*, 248 Or. 467, 435 P.2d 806 (1967). But, citing *Quirk v. Ross, supra,* GM claims that the *Heaton* rule permitting inference of a defect from evidence of a product failure applies only to new vehicles. A close reading of *Quirk*, especially in light of *Russell v. Ford Motor Co.*, 281 Or. at 597, 575 P.2d 1383, demonstrates that it does not establish such a limited proposition. The instruction from *Heaton* was correct.

### 5. Inference of Cause of Accident

The district court also instructed the jury on the permissible inference that a defect, rather than driver negligence, caused the accident.[2] GM objected, contending that plaintiffs must first prove a performance failure before there can be an inference of product defect.

Nothing in the instruction would permit a jury finding of a defect without a finding of performance failure. Indeed, the court's next instruction concerned inference of a defect from "failure to perform safely". Taken together, the two instructions told the jury what it needed to know.

The logical chain that the district judge asked the jury to construct was essentially the same as in *Newman v. Utility Trailer and Equipment Co., Inc.*, 278 Or. 395, 564 P.2d 674 (1977). There the issue concerned a defect (broken tow brace) in the semitrailer in which plaintiff was riding when the truck crashed. The Oregon Supreme Court held that there must first be a finding that the trailer wheels failed to follow the tractor before there could be a finding that the tow brace was defective. 278 Or. at 403, 564 P.2d 674. But the finding of performance failure was a jury question, and the evidence, although circumstantial, was sufficient to establish the failure and hence the inference of a defect, even though plaintiff's witnesses discovered no defect in the tow brace after the accident. 278 Or. at 404–05, 564 P.2d 674.

The district court here asked the jury to follow the same procedure as that in *Newman* : consider the circumstantial evidence of a performance failure in the vehicle and decide whether the failure, if established, caused the accident. The instruction was not erroneous.

Affirmed.

---

2. "The mere fact that an accident occurred or that a party was injured does not indicate either that Lustre was negligent or that the Impala was defective. Yet, if you find the fact that the Chevrolet left the roadway is unexplained, then it is permissible for you to infer that this was due either to negligence on Mr. Lustre's part or to a defect in the Impala. You should consider all the evidence, however, before actually deciding either issue.

"For the Plaintiffs to recover, they must prove these five essential elements by a preponderance of the evidence: One. That the mounts in the Impala were defectively designed or manufactured by the Defendant. Two. That the defect made the car unreasonably dangerous. Three. That the defect existed at the time it left General Motors' possession. Four. That the defect was a substantial factor in causing the accident. And five. That the Plaintiffs were thereby damaged. Failure of proof on any one of these essential elements means that you must return a verdict for the Defendant."