Sarah COURSEN and Katherine Cook,
Plaintiffs-Appellants,

v.

A.H. ROBINS COMPANY, INC., a
Virginia corporation,
Defendant-Appellee.

Terri JOHNSON, Gayle McCann, Laurie
Jo Franz, Debbie Rohn, and Pamela
Van Duyn, Plaintiffs-Appellants,

v.

A.H. ROBINS COMPANY, INC., a
Virginia corporation,
Defendant-Appellee.

Nos. 84–3854 to 84–3861.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Decided July 3, 1985.

Jacob Tanzer, Ball, Janik & Novack, Portland, Or., for plaintiffs-appellants.

Carol A. Hewitt, Lindsay, Hart, Neil & Weigler, Portland, Or., for defendant-appellee.

Before GOODWIN and SKOPIL, Circuit Judges, and VUKASIN,* District Judge.

---

\* The Honorable John P. Vukasin, Jr., United States District Judge for the Northern District of California, sitting by designation.

SKOPIL, Circuit Judge:

These consolidated appeals are from judgments in actions for compensatory and punitive damages instituted by plaintiffs against defendant, A.H. Robins Co., Inc. ("Robins"), manufacturer of a contraceptive intrauterine device known as the Dalkon Shield. Plaintiffs raise a number of evidentiary and other legal issues on appeal. For reasons stated below, we affirm in part, reverse in part, and remand in part.

## FACTS AND PROCEEDINGS BELOW

Each plaintiff maintained that she had been injured by use of the Dalkon Shield by contracting pelvic inflammatory disease ("PID"). PID is a disease caused when harmful bacteria from the vagina enter the uterus.

Other plaintiffs in related proceedings not at issue here allege they had been damaged by becoming pregnant while using the Dalkon Shield and subsequently undergoing elective abortions. *Gray v. A.H. Robins, Inc.*, No. 80–6334–E (D.Or. 1980). In an early evidentiary ruling, the district court held that where plaintiffs' claims were limited to injuries associated with pregnancy, any testimony regarding other possible injuries to, or other side effects suffered by, users of the Dalkon Shield would be inadmissible as irrelevant, prejudicial, collateral, and potentially confusing. *Steimetz v. A.H. Robins Co., Inc.*, No. 75–716 (D.Or.1975). Consistent with that holding, the court refused to admit evidence of pregnancy rates in PID cases. The parties stipulated that when discussing the efficacy of the Dalkon Shield, both parties would treat it "as if it were no better and no worse than other IUDs in this regard."

All pregnancy-related cases were eventually settled or dismissed. The district court ordered consolidation of the remaining PID cases for trial. Under the district court's consolidation order, general liability issues common to the PID plaintiffs on the

theories of fraud, negligence, and strict liability were tried first. Individual causation and damage issues were tried thereafter in *seriatim* fashion before the same jury. The district court also bifurcated the issue of punitive damages for consideration when all individual causation and compensatory damage trials had been completed.

In November 1983, prior to the trial of the liability issues, plaintiffs filed motions *in limine* to exclude evidence regarding sexual histories. The trial judge denied plaintiffs' motions. The right to consider such evidence on a case-by-case basis was reserved.

The jury found that the Dalkon Shield was dangerously defective, but that plaintiffs had failed to prove that Robins was negligent or had committed fraud.[1]

Individual claims were tried before the same jury. In the seven individual cases adjudicated by the jury, three ended in plaintiffs' verdicts: *Van Duyn* ($147,500), *Kuhnhenn* ($273,000), and *Johnson* ($175,000); and three ended in defense verdicts: *McCann, Franz,* and *Rohl.* The jury declined to award Van Duyn's husband, James Van Duyn, damages for loss of consortium.

The claims of appellants Cook and Coursen were scheduled for trial. Before their trials, Cook and Coursen filed renewed motions *in limine* to exclude evidence of sexual activity. Consistent with its prior ruling, the district court declined to exclude sexual activity evidence, and indicated that defendant was entitled to offer to prove that plaintiffs' infections were caused by sexual activity.

After denial of their renewed motions, Cook and Coursen moved for and were granted what they characterized as involuntary dismissals with prejudice. Upon defendant's motion and following a hearing, an order correcting the minute entry and recharacterizing the dismissals as voluntary was issued. Judgments were entered

accordingly. Cook and Coursen filed a notice of appeal.

Following resolution of all individual claims, the district court granted Robins' motion to strike plaintiffs' prayers for punitive damages. Because the jury found plaintiffs had failed to prove negligence, the court concluded that defendant could not be guilty of "wanton misconduct," a prerequisite to the recovery of punitive damages.

Pursuant to Fed.R.App.P. 42(b), plaintiff Kuhnhenn and defendant Robins have stipulated to the dismissal of her appeal. An order has been entered. Except for James Van Duyn, all other plaintiffs appeal. Pamela Van Duyn appeals only from the denial of punitive damages. McCann, Franz, Johnson, and Rohl appeal from the judgment in its entirety. They do not challenge the verdict's finding of strict liability. Robins cross-appeals in the Van Duyn case arguing that if reversal is ordered by this court, the reversal is applicable to all plaintiffs and all claims. Rohl also claims error in the denial of a continuance in her individual trial.

## ISSUES

1. Did the district court err in excluding evidence of pregnancy rates associated with the Dalkon Shield?

2. Did the district court err in striking plaintiffs' prayers for punitive damages?

3. Did the district court err in instructing the jury on the unavoidable danger defense?

4. Did the district court err in admitting evidence of plaintiffs' sexual histories?

5. Did the district court err in rescheduling the Rohl trial?

6. Are the district court's ruling on the Cook and Coursen motions *in limine* reviewable where appellants' cases

---

1. The jury originally found that Robins was not negligent but further concluded that in comparing the fault of plaintiff and defendant, plaintiff was 40% while defendant was 60% at fault. The case was resubmitted to the jury following fur-

ther instructions by the court after consulting with counsel. The jury then returned a verdict for plaintiffs on their strict liability claim but for defendant on the remaining claims.

were dismissed before trial based on the perceived prejudicial effect of those rulings?

## DISCUSSION

### 1. Pregnancy Rates Evidence.

Appellants maintain that the district court erred in excluding relevant pregnancy rates evidence. Pregnancy rates evidence refers to two types of evidence—evidence of the actual effectiveness of the Dalkon Shield and evidence that Robins in promotional literature frequently misrepresented the effectiveness of the Dalkon Shield.

■ Evidentiary decisions are reviewed for an abuse of discretion. *Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1195 (9th Cir.1982); *Hill v. Rolleri,* 615 F.2d 886, 890 (9th Cir.1980). The admission or exclusion of evidence under Fed. R.Evid. 403 or 404 is reversible only for a clear abuse of discretion. *See United States v. Diggs,* 649 F.2d 731, 737 (9th Cir.) (Rule 403 and 404), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *United States v. Ford,* 632 F.2d 1354, 1375 (9th Cir.1980) (Rule 404), *rejected on other grounds, United States v. DeBright,* 730 F.2d 1255 (9th Cir.1984) (en banc); *Longenecker v. General Motors Corp.,* 594 F.2d 1283, 1286 (9th Cir.1979) (Rule 403). Evidentiary errors will not be reversed absent some resulting prejudice. *Haddad v. Lockheed California Corp.,* 720 F.2d 1454, 1459 (9th Cir.1983); *see also Hill,* 615 F.2d at 890 (evidentiary error is a basis for reversal if the error affected "any substantial rights" of a party).

### A. Actual Effectiveness Rates

Appellants contend that evidence of actual pregnancy rates associated with the Dalkon Shield should have been admitted to show the benefits of the product did not outweigh its dangers. Because appellants failed to make an offer of proof, Robins maintains that the exclusion of such evidence is not reviewable. Alternatively it claims the district court's exclusion of such evidence was not erroneous.

, A district court's exclusion of evidence is reviewable on appeal only if "the substance of the evidence was made known to the court by offer or was apparent from the context in which the questions were asked." Fed.R.Evid. 103(a)(2). Here, while appellants made no formal offer of proof, they did apprise the judge of the purpose of the evidence. The evidence of pregnancy rates associated with the Dalkon Shield was offered so "the jury would not be left with the mistaken impression that the Shield's benefits outweighed its risks." The trial judge was sufficiently familiar with the multiple theories of liability and the substance of the pregnancy rates evidence to make an informed evidentiary decision. *See United States v. Sims,* 617 F.2d 1371, 1376 n. 4 (9th Cir.1980) (exclusion of evidence reviewable although no offer of proof). *See also United States v. Cook,* 608 F.2d 1175, 1186 (9th Cir.1979) (despite the absence of formal offer of proof, the exclusion of evidence is reviewable), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Nevitt,* 563 F.2d 406, 409 (9th Cir.1977) (no offer of proof required where court was "fully aware of the substance of the excluded evidence"), *cert. denied,* 444 U.S. 847, 100 S.Ct. 95, 62 L.Ed.2d 61 (1979). We do not believe Fed.R.Evid. 103(a)(2) bars our review of this evidentiary issue.

■ Evidence of pregnancy rates associated with the Dalkon Shield is probative of strict liability and negligence issues. In determining whether a product is defective, it is always necessary to balance a product's utility against any harm it may cause. *Phillips v. Kimwood Machine Co.,* 269 Or. 485, 499, 525 P.2d 1033, 1039 (1974); *Legislative Codification of Strict Products Liability Law in Oregon,* 59 Or.L.Rev. 363, 370–71 (1980). Similarly, in evaluating the reasonableness of defendant's conduct in a negligence action, the jury is entitled to weigh the usefulness of a product against its harm. *Phillips,* 269 Or. at 499, 525 P.2d at 1039; *see also Hilliard v. A.H. Robins Co.,* 148 Cal.App.3d 374, 410–11, 196 Cal.Rptr. 117, 141 (2nd Dist.1983).

■ Nevertheless, the trial court did not err in excluding pregnancy rates evidence under Fed.R.Evid. 403 on the grounds that such evidence was prejudicial, collateral, and potentially confusing. *See Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 274 (9th Cir.1978) (evidence on a collateral issue may unduly distract or mislead the jury). As the district court noted:

> The critical issue in this case is whether the multifilament tailstring or other design defect of the Dalkon Shield caused the injuries to plaintiff. . . .

Even if we would strike the 403 balance differently, the district court did not abuse its discretion in concluding that, in a case involving pelvic disease, evidence of pregnancy rates was collateral and potentially confusing.

■ The jury found for appellants on the strict liability issue. The appellants were not prejudiced by the exclusion of this evidence. *See Hill*, 615 F.2d at 890. With respect to their remaining claims, appellants failed to demonstrate that the exclusion of pregnancy rates evidence "more probably than not" tainted the verdict. *Haddad*, 720 F.2d at 1459.

### B. Fraudulent Reporting of Pregnancy Rates

Appellants further allege that the district court erred in excluding evidence that Robins knowingly published false data about the Dalkon Shield's efficacy rate. They contend that the pregnancy rate evidence known by Robins to be false would have aided the jury in drawing the inference that Robins knowingly misrepresented the Dalkon Shield to be safe.

The theory of admissibility of evidence of fraud in reporting pregnancy rates is different than the theory of admissibility of pregnancy rates evidence generally. With respect to evidence of fraud,[2] appellants invoke Fed.R.Evid. 404(b) for the first time

on appeal. *Cf. United States v. O'Brien*, 601 F.2d 1067, 1071 (9th Cir.1979) (where defendant's objection insufficient to apprise the trial judge of the nature of the objection, defendant precluded from asserting proper objection on appeal); *United States v. Lara-Hernandez*, 588 F.2d 272, 273–74 (9th Cir.1978) (presenting additional evidentiary theories after verdict "does not . . . allow the trial judge to make an informed ruling based on the issues at trial"). Appellants again failed to make any formal offer of proof.

Nonetheless, the substance of this fraud evidence and appellants' theory of admissibility were apparent to the district court. In ruling on the motion to exclude this evidence, the district court noted that "neither misrepresentations of efficacy, nor . . . labeling related to side effects other than pelvic inflammatory disease, were the cause of plaintiff's injury. . . . [N]one of this evidence is related [sic] . . . it does nothing except generally show defendant in a bad light . . . [I]t should be excluded under Federal Rule of Evidence 403." While the trial judge had sufficient information to make an informed judgment on this evidence, the absence of a formal offer of proof and the failure to invoke Rule 404(b) are nonetheless significant. We have an obligation to assess evidentiary rulings with a view to what was presented to the trial judge and not the finely spun analysis presented on appeal. *Ford*, 632 F.2d at 1377; *Longenecker*, 594 F.2d at 1286.

■ We now turn to appellants' contention that evidence of fraud in reporting pregnancy rates was admissible under Rule 404(b). Evidence of prior misconduct is admissible if it is clear and convincing; relevant to an issue other than character; and its probative value outweighs any potential prejudicial effect. Fed.R.Evid. 404(b); *see also United States v. Hooton*,

---

**2.** The evidence of fraud referred to by appellants in their opening brief is not a matter of record. This evidence consists of deposition testimony of an expert not offered or admitted at trial and pregnancy rate information reflected in documents which the parties agreed would be admitted solely for purposes of litigating the safety issue. These documents generally show that while defendant was reporting pregnancy rates ranging from 1.1% to .5%, there were indications of higher pregnancy rates ranging from 4.3% to 5.1%.

662 F.2d 628, 634–35 (9th Cir.1981) (citing *United States v. Brashier,* 548 F.2d 1315, 1325 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977)), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982); *Ford,* 632 F.2d at 1375. Such evidence may not be admitted to show a propensity or proclivity to commit bad acts. *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 772 (9th Cir.) (no error in refusing to admit under 404(b) evidence of a consent decree entered in a prior SEC enforcement proceeding), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). Nor is such evidence admissible to show that a person acted in conformity with his bad character. *United States v. Bettencourt,* 614 F.2d 214, 217 (9th Cir.1980) (prior assault by defendant tended to prove his "quarrelsome disposition," but little else); *but cf. United States v. Diggs,* 649 F.2d at 737 (prior bad conduct may be admitted to show criminal propensity when entrapment is raised as a defense).

■ Evidence of publication of false efficacy ratings is arguably probative of defendant's intent or plan insofar as it shows an opportunity for reflection or a pattern of neglect. *Hilliard,* 148 Cal.App.3d at 410–11, 196 Cal.Rptr. at 141–42. The district court concluded this evidence did "nothing except generally show defendant in a bad light." The overwhelming thrust of this evidence was to have the jury believe that because defendant lied about the effectiveness of the Dalkon Shield, it lied about the safety of the device as well.

The district court did not abuse its discretion in concluding, under Rule 403, that prejudice and confusion would be generated by innuendos of collateral misconduct. *See Hill,* 615 F.2d at 890 (in automobile collision case the district court did not err in excluding under Rule 403 evidence of a prior citation).

Finally, we find no merit to appellants' contention that appellee "opened the door" to such evidence when it presented "a defense based on low pregnancy rates." Since pregnancy rate data permeated the documentary evidence, both parties conceded the inevitability of some incidental references to efficacy and pregnancy rates. The parties stipulated that, with respect to effectiveness, the Dalkon Shield would be treated as no better and no worse than other IUDs. While both parties referred to efficacy, appellee did not present a defense based on low pregnancy rates or refer to efficacy in an argumentative manner.

## 2. Punitive Damages.

Following the return of the liability verdict, the district court, on Robins' motion, withdrew the issue of punitive damages from the jury. The court concluded that "[c]onduct which the jury found not negligent could not be found, by the same jury, to have been a display of wanton disregard for the health of others." Appellants maintain this ruling was erroneous first, because they claim they are entitled to prove wanton disregard based solely on a strict liability verdict, and second, because there was additional evidence which was not admissible at the general liability phase which would have been admissible to show wanton disregard.

■ The district court's decision to strike plaintiffs' prayers for punitive damages based upon an interpretation of state law is subject to *de novo* review. *In re McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (*en banc*).

Oregon Revised Statute 30.925 sets a comprehensive standard for punitive damages in products liability actions, which include claims of strict liability, negligence, and fraud. *Philpott v. A.H. Robins Co., Inc.,* 710 F.2d 1422, 1424 (9th Cir.1983) (applying Oregon law). Oregon Revised Statute 30.925 incorporates the common law requirement of a showing of "wanton disregard" or deliberate indifference. *See, e.g., Ryan v. Foster & Marshall, Inc.,* 556 F.2d 460, 465 (9th Cir.1977) (defendant's conduct was sufficiently aggravated to permit an award of punitive damages under Oregon law); *Oksenholt v. Lederle Labs,* 294 Or. 213, 223, 656 P.2d 293, 300 (1982) (proof of deliberate disregard of rights and welfare of others required); *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or. 229, 238–39, 578 P.2d 1225, 1229–30 (1978) (setting aside award because defendant's con-

**1336**

duct was not sufficiently arbitrary and unconscionable). The Oregon statute is intended to protect manufacturers from punitive damage awards by requiring plaintiff to show wanton disregard by "clear and convincing" evidence. *Products Liability,* 16 Willamette L.Rev. 219, 230–33 (1979) (noting a legislative intent underlying section 30.925 to protect manufacturers from excessive jury awards and suggesting that punitive damages are disfavored in Oregon).

■ We need not decide whether a theoretical inconsistency prevents an award of punitive damages when plaintiff prevails solely upon a strict liability claim.[3] Appellants prevailed on their strict liability claim, but failed on their negligence claim. "Wanton disregard" obviously means more than mere negligence. *See Schmidt v. Pine Tree Land Devel. Co.,* 291 Or. 462, 469, 631 P.2d 1373, 1376 (1981); *Noe v. Kaiser Foundation Hospitals,* 248 Or. 420, 424, 435 P.2d 306, 308 (1967).

■ Despite their failure to prove negligence, appellants claim a right to punitive damages by arguing that four types of evidence not admissible on the liability issues would have been admissible to show wanton disregard at the damages phase of their case. This evidence includes (1) alleged fraudulent statements about the Shield's pregnancy rates; (2) an illegal lay advertising campaign; (3) Robins' decision not to withdraw the Dalkon Shield because of fear that such action would prejudice its

litigation stance; and (4) the perjury of Dr. Davis, one of the physicians responsible for the design of the Shield, when testifying about the Shield before a congressional committee. Appellants' argument fails.

Some of this evidence was never offered at the liability phase. We have no way of knowing how the district court would have evaluated it. Evidence which was rejected during the liability trial as collateral, prejudicial, and confusing would for the same reasons probably have been rejected at the damages phase.

Evidence of an illegal lay promotional campaign, or of perjury by Dr. Davis, or of fraud in the publication of pregnancy rates concerns collateral misconduct unrelated to the specific injury suffered by the plaintiffs. *See Noe,* 248 Or. at 424–27, 435 P.2d at 308–09 (punitive damages justified on a theory of deterring conduct which caused harm to plaintiff); *see also Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 351–52, 546 P.2d 1065, 1071 (1976) (same); Oregon Uniform Civil Jury Instruction 35.01 (1984).

### 3. Unavoidable Danger Instruction.

Appellants maintain the district court erred when it instructed the jury, pursuant to Comment k of the Restatement (Second) of Torts § 402A, that defendant could not be held liable for injuries caused by unavoidable defects in intrauterine devices generally but only for injuries caused by a particular defect in the Dalkon Shield.[4]

**3.** No Oregon court has yet decided whether a plaintiff who prevails solely on a strict liability claim is entitled to punitive damages. Those courts which have decided this question are split. *Compare Palmer v. A.H. Robins Co., Inc.,* Colo., 684 P.2d 187, 217–18 (1984) (punitive damages recoverable in strict liability action); *and Piper Aircraft Corp. v. Coulter,* Fla., 426 So.2d 1108, 1109 (Fla.App.1983) (strict liability alone sports an award of punitive damages); *with Gold v. Johns-Manville Sales Corp.,* 553 F.Supp. 482 (D.N.J.1982) (strict liability would not support a claim for punitive damages); *and Butcher v. Robertshaw Controls Co.,* 550 F.Supp. 692 (D.Md.1981) (same). ORS § 30.925 makes clear that regardless of the nature of plaintiff's claims, "wanton disregard" must be shown.

**4.** In the *Van Duyn* consolidated liability trial the court instructed the jury that "[w]e know ...

that ... all intrauterine devices were incapable of being made completely safe.... If the Dalkon Shield was properly manufactured and designed it should not be considered dangerously defective [because of] unavoidable side effects...."

In the *McCann, Franz* and *Rohl* trials, the following instruction was given: "In making this determination [of causation], you are to distinguish between an injury caused by a particular defect in the Dalkon Shield and side effects which we know are common with all intrauterine devices which are not dangerously defective."

In the *Kuhnhenn* trial, the appellants concede that a less explicit version of this instruction, without the "we know" language, was given. No instruction was apparently given in *Johnson.*

They contend that a determination of whether a product is unavoidably unsafe requires a balancing of the known risks and the social utility of the product. Because they were precluded from presenting evidence of the latter, appellants argue that the court erred in instructing the jury on unavoidability. Second, they contend that the instruction improperly shifted the burden of proving unavoidability to plaintiffs. Finally, they argue that they were precluded from introducing evidence that the Dalkon Shield's particular defects caused plaintiffs' injuries.

In assessing jury instructions, consideration must be given to the charge as a whole to determine whether it is misleading or incorrectly states the law to the prejudice of the objecting party. *Smiddy v. Varney*, 665 F.2d 261, 265 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). We will not reverse a judgment because of a mistake in jury instructions if the instructions fairly and adequately cover the issues presented. *Id.; see also United States v. Marabelles*, 724 F.2d 1374, 1382–83 (9th Cir.1984) (standard of review of jury instructions in criminal cases). An error in a civil trial need only be more probably than not harmless. *Haddad*, 720 F.2d at 1459.

Comment k to Restatement (Second) of Torts § 402A, codified at ORS § 30.920(3), has not been interpreted by any Oregon court. Generally, Comment k applies to those cases where a product is incapable of being made safe given the present state of human knowledge but possesses such a high degree of social utility that its use is warranted provided warnings are adequate. *See, e.g., Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1274–75 (5th Cir.) (oral polio vaccine unavoidably unsafe under Comment k), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Fellows v. USV Pharmaceutical Corp.*, 502 F.Supp. 297, 300 (D.Md.1980) (prescription drug constituted unavoidably unsafe product). Originally, Comment k was intended to apply to experimental drugs manufactured to cure life-threatening diseases. *See Legislative Codification of Strict Products Liability Law in Oregon*, 59 Or.L.Rev. 363,

400–01 (1981) (discussing intent of drafters of Comment k). A number of courts have extended Comment k's rationale to cases involving the uses of oral contraceptives, *see, e.g., Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 657 (1st Cir.1981); *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 90–92 (2d Cir.1980); *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541, 545 (1979), and intrauterine devices, *see, e.g., McKee v. Moore*, 648 P.2d 21 (Okla.Sup.Ct.1982); *Terhune v. A.H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975, 978–79 (1978); *but see Hawkinson v. A.H. Robins Co., Inc.*, 595 F.Supp. 1290, 1308 (D.Colo.1984) (finding a failure to prove applicability of Comment k as a factual matter); *Note, The Intrauterine Device: A Criticism of Governmental Complacence and an Analysis of Manufacturer and Physician Liability*, 24 Clev. St.L.Rev. 247, 277, 291–92 (1975) (noting the similarities between IUDs and drugs but nonetheless arguing that Comment k should not be applicable to IUD cases). If the prerequisites to establish a Comment k defense are met, the defense applies to Dalkon Shield cases.

Appellants' contention, that the jury could not evaluate the social utility of the product as opposed to its risks because they were precluded from introducing evidence of pregnancy rates associated with the Dalkon Shield, is without merit. The jury heard evidence from both sides concerning the general utility of the Dalkon Shield and other IUDs and as compared to other forms of birth control. There is no indication that appellants' pregnancy rates evidence would have shown the Dalkon Shield to be less effective than other forms of contraception. *Cf. Hawkinson v. A.H. Robins Co., Inc.*, 595 F.Supp. at 1307 (D.Colo.1984) (noting that the Dalkon Shield's unique, though defective, design probably made it a more effective contraceptive). The parties stipulated that when efficacy was mentioned both sides would treat the Dalkon Shield as if it were no better and no worse than other IUDs.

1338

■ There are, however, several more serious difficulties with the Comment k instructions given by the court. First, the court erred in shifting to appellants the burden of proving that the defects in the Dalkon Shield, as opposed to other IUDs, caused their injuries. Comment k is an affirmative defense. The defendant bears the burden of proof. *See Worsham v. A.H. Robins Co.*, 734 F.2d 676, 690 (11th Cir. 1984); *Hawkinson*, 595 F.Supp. at 1308; *Terhune*, 90 Wash.2d at 16–17, 577 P.2d at 979.

■ Second, the court erroneously reinstructed the jury concerning Comment k at the damages phase of this bifurcated proceeding. During the liability phase of this case, there was substantial testimony of comparative risks of IUDs generally and the Dalkon Shield particularly. There was evidence that in order to prevent expulsion, the fins of the Dalkon Shield had greater contact with the surface of the uterus resulting in increased likelihood of infection. There was also evidence that the Dalkon Shield's tailstring, made with a capillary multifilament string encased in a sheath, had a greater tendency to transmit bacteria from the vagina through the cervix into the uterus. Robins' proof indicated that PID was a risk in the use of any IUD and that the risk of injury was no greater when using the Dalkon Shield.

■ After reviewing all the evidence, the jury concluded that the Dalkon Shield was defective. While the court's Comment k instruction at the liability phase erroneously placed the burden of proving avoidability on the plaintiffs, the plaintiffs cannot claim prejudice given the jury's finding the Dalkon Shield was a dangerously defective product. Once the jury concluded that the Dalkon Shield was defective, the jury implicitly rejected defendant's "unavoidably unsafe" defense. If the jury had accepted

the "unavoidably unsafe" defense at the liability phase, then under the court's initial Comment k instruction, it would have had to conclude that the Dalkon Shield was not defective.

Robins maintains that the burden of proving causation remained on plaintiffs at the damage phase. Given the risk of PID associated with the use of any IUD, Robins argues that plaintiffs bore the burden of showing that the particular defect in the Dalkon Shield caused their injury. It is true that the burden of proving causation is on plaintiffs. The court's "unavoidably unsafe" instruction in the individual trials did more than impose on plaintiffs the burden of proving causation. That instruction imposed on plaintiffs the burden of proving avoidability. Stated differently, the plaintiffs bore the burden of proving that their injuries were not caused by a characteristic common to all IUDs. Once the jury concluded that the Dalkon Shield was defective, defendant was no longer entitled to maintain that the defect in the Dalkon Shield was not unique to it but was present in all IUDs.

■ Placing the burden on individual plaintiffs of disproving the "unavoidably unsafe" affirmative defense, under the guise of proving causation, was error. Nonetheless, given the individual verdicts in the separate damage trials, it is difficult to conclude that the instruction "more probably than not" affected the verdict. *Haddad*, 720 F.2d at 1459. The Comment k instruction was given in the *McCann, Franz,* and *Rohl* individual damage trials and the jury returned a verdict for the defendant in those cases. The same instruction or a slight variation thereof was also given in the *Van Duyn* and *Kuhnhenn* trials.[5] In these latter cases, plaintiffs prevailed. Given these inconsistent

<hr>

5. The complete "unavoidably unsafe" instruction was given in the *Van Duyn* consolidated liability trial and yet appellant Van Duyn prevailed. Similarly, in the first individual damage trial, the *Kuhnhenn* trial, the *Van Duyn* Comment k instruction, without the "we know" language, was given and plaintiff Kuhnhenn prevailed. While the instruction in *Kuhnhenn* was

not given orally, the trial judge indicated that the jury "should feel free to ... [reread] the written copies [of instructions]...." apparently referring to the instructions from the *Van Duyn* case. In light of the plaintiff verdicts in cases in which the objectionable instruction was given, we cannot conclude that this instruction prejudiced the appellants.

outcomes, we cannot conclude that appellants were prejudiced by the erroneous Comment k instruction. *Id.*

We recognize that it is often difficult for an appellant to show that a trial error, especially an erroneous jury instruction, adversely affected the verdict. However, where, as here, there is at least some indication, by way of favorable verdicts, that the instruction did not operate to seriously disadvantage plaintiffs, then we are unwilling to reverse the lower court judgment.

We find no merit to appellants' final allegation, that they were precluded from presenting evidence on whether the particular defects in the Dalkon Shield were the cause of plaintiffs' injuries. There was substantial testimony comparing the design and relative risks of the Dalkon Shield and other IUDs. There was also specific testimony linking the defect in the Dalkon Shield to plaintiffs' injuries. The district court did not abuse its discretion in excluding additional testimony concerning defects in the Dalkon Shield as cumulative. *United States v. Cox,* 633 F.2d 871 (9th Cir. 1980), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981).

### 4. Sexual History Evidence.

Appellants maintain that it was error for the district court to admit evidence of individual plaintiff's sexual histories because such evidence was irrelevant and prejudicial. Appellants argue that multiple sex partners is a risk factor that resulted in a greater than average statistical incidence of PID, but is not a cause of PID. Appellants further argue the evidence was highly prejudicial because there was no proof that this sexual activity caused plaintiffs' injuries and this activity was remote in time.

Appellee maintains the jury was entitled to hear evidence of all possible alternative explanations for plaintiffs' injuries. Robins asserted a defense of lack of causation

based on plaintiffs' multiple sexual encounters. Assuming the legitimacy of this defense,[6] Robins maintains evidence of sexual activity is relevant because it suggests another possible cause of plaintiffs' injuries. Robins argues that women who are sexually active with multiple partners have a slightly greater risk of contracting PID. The more sexual partners a woman has the more likely it is that she will come into contact with bacteria that might be harmful if transmitted into a woman's uterus. In an attempt to explain the presentation of evidence of sexual activity remote in time, appellee noted some bacteria are asymptomatic and may infect a person without that person's knowledge. Injury from that infection may not become apparent until much later.

In ruling on sexual history evidence, the district court concluded that "the jury might find that sexual activity with multiple partners may have caused the infection and not the IUD." The court therefore declined to exclude such evidence.

Evidentiary decisions are reviewed for an abuse of discretion. *Hill,* 615 F.2d at 890. The admission of evidence under Rule 403 is also reviewed for an abuse of discretion. *Longenecker,* 594 F.2d at 1286. Evidentiary errors will not result in reversal absent some resulting prejudice. *Haddad,* 720 F.2d at 1459; *Hill,* 615 F.2d at 890.

Under Fed.R.Evid. 401, evidence tending to make a consequential fact more or less probable is relevant. *Brashier,* 548 F.2d at 1324. Federal Rule of Evidence 403 recognizes that relevance is not always enough. Even though evidence is relevant, the probative value as well as the harmful consequences that might flow from its admission must be assessed. Fed.R.Evid. 403; *Cohn v. Papke,* 655 F.2d 191, 194 (9th Cir.1981).

██ In this case, sexual history evidence was arguably marginally relevant.

---

**6.** Robins' defense of lack of causation based upon plaintiffs having engaged in multiple sexual encounters is questionable. The Dalkon Shield was not designed for use by persons who are not sexually active. Its purpose was to prevent conception while permitting users to

engage freely in sexual activity. *See Hawkinson,* 595 F.Supp. at 1306. The sale of the Dalkon Shield was not restricted to monogamous women. *Id.* Therefore, the safety of the product should be considered in a climate of sexual activity. *Id.*

Such evidence was also potentially highly prejudicial. *See Cohn,* 655 F.2d at 194 (introduction of evidence regarding prior sexual experiences extremely prejudicial). Even assuming it was error to admit evidence of the individual plaintiff's sexual histories where that sexual activity was remote in time and not directly correlated to plaintiffs' injuries, we conclude that the introduction of that evidence was "more probably than not" harmless. *Haddad,* 720 F.2d at 1459.

Appellant Johnson may not claim prejudice from the introduction of this evidence in light of the damage award in her favor. *Haddad,* 720 F.2d at 1459. Franz may not object to the introduction of evidence of her husband's sexual activity. Despite her *in limine* objection, the evidence was elicited by appellant's counsel's direct examination of Mr. Franz. Franz's contention that it was proper to elicit this testimony in order to "take the sting" out of having those matters brought out on cross-examination is without merit. *See Porterfield v. Burlington Northern, Inc.,* 534 F.2d 142, 145–46 (9th Cir.1976) (attorney, who as a matter of trial strategy, takes certain action cannot later seek reversal as a result of that trial strategy decision); *Rojas v. Richardson,* 703 F.2d 186 (5th Cir.), *on rehearing,* 713 F.2d 116, 117–18 (5th Cir.1983) (plaintiff's counsel, through his election of trial tactics, had waived reversible error).

In *McCann,* the issue was whether the Dalkon Shield caused plaintiff's 1974–75 episode of PID resulting in her infertility, as diagnosed in 1983. McCann originally moved to exclude all sexual history evidence after 1974–75. Appellant limited her objection to evidence of sexual activity after 1981 when McCann separated from her husband. The parties stipulated concerning plaintiff's sexual relationships after 1981. This stipulation was the only evidence admitted concerning McCann's sexual activity. Neither party made any reference to sexual activity or to this stipulation in their arguments. In these lengthy proceedings, we do not believe the jury gave undue weight to this sexual activity evidence.

Appellants Cook and Coursen may not obtain review of the *in limine* ruling on sexual activity evidence in light of their failure to proceed to trial. *See* Discussion part 6, *infra.* Absent a ruling on this evidence in the context of trial and a resulting verdict, it is impossible to judge the effect of this evidentiary error on any verdict. *Haddad,* 720 F.2d at 1459.

**5. Rescheduling of the Rohl Trial.**

Appellant Rohl contends that she was prejudiced because the trial court rescheduled her trial from February 14, 1984 to February 10, 1984. Toward the close of the *Franz* case, a disagreement arose as to whether the *Miller* case scheduled for February 9, 1984 had been settled. The court agreed to hold a hearing on the *Miller* settlement but informed counsel that "[e]ither the *Rohl* or the *Miller* case will commence [February 10] tomorrow morning." Rohl's counsel objected, pointing to difficulties in rescheduling witnesses and preparation time. The court overruled the objections. Rohl's trial commenced February 10, 1984.

The timing of trials and control of the docket are matters left to the discretion of the district court. *See Mediterranean Enterprises, Inc. v. Ssangyong,* 708 F.2d 1458, 1465 (9th Cir.1983) (no abuse of discretion in staying action pending arbitration); *CMAX, Inc. v. Hall,* 300 F.2d 265, 270 (9th Cir.1962) (delaying a trial was not an abuse of discretion). The district court should take pains to assure the prompt hearing and disposition of cases. *Hoptowit v. Ray,* 682 F.2d 1237, 1261 (9th Cir.1982) (*citing Freehill v. Lewis,* 355 F.2d 46, 48 (4th Cir.1966)). *See also Ruiz v. Hamburg-American Line,* 478 F.2d 29, 31–32 (9th Cir.1973) (no abuse of discretion in denying a continuance in attempt "to conclude expeditiously an already lengthy case").

The trial court's decision was consistent with the scheduling guidelines agreed to by the parties. Those guidelines contemplated changes in trial dates by "not more than one day one way or another

from the date set." The transcript indicates that Rohl had adequate opportunity to prepare and present her case. Rohl's husband was unavailable to testify, but she testified and presented the testimony, albeit in deposition form, of one of her treating physicians and a medical expert. The district court did not err and plaintiff was not prejudiced by the rescheduling of her trial.

## 6. Review of the Denial of Cook and Coursen Motions In Limine.

Cook and Coursen seek review of the lower court's *in limine* rulings concerning the use of sexual history evidence in their cases. They claim they are entitled to such a review based upon the entry of a judgment of dismissal following the lower court's decision refusing to exclude such evidence. Robins maintains that appellants voluntarily dismissed their actions and the judgments are not appealable.

After the district court declined to exclude sexual history evidence in the Coursen case, plaintiff's counsel stated that, "[b]ased on your ruling, ... [our client] is not willing to go forward with the case and put on evidence, ... and, therefore, we will take an involuntary dismissal with prejudice." Following a brief conference with opposing counsel, plaintiff's counsel stated for the record, "the proposal that [opposing counsel and I] would make together is that the jury be instructed that ... this case will be dismissed as a matter of law and that neither side, therefore, would be blamed for it...."

Following the adverse evidentiary ruling in the Cook case, plaintiff's counsel stated, "[i]n that event, Your Honor, we have the same instruction from Ms. Cook as we had from Sarah Coursen. She has chosen not to proceed in allowing that evidence to come in without having tested the ruling on appeal, if she is entitled to do that in this situation; therefore, I would seek an involuntary dismissal...." The district court granted both motions for an involuntary dismissal.

Robins then moved for correction of the minute entry to reflect the grant of a vol-untary dismissal. The court twice heard argument concerning this motion. In the first instance, the court noted that

> The transcript will say, I am sure, use the words involuntary dismissal; involuntary something, anyway.

> Obviously, it was voluntary, but they used the words involuntary, which I interpreted as meaning this:

> "Since you have ruled the way you have on those issues, we're not going to put on any evidence."

> Then the only recourse available to the court is to dismiss the case on an involuntary dismissal. That's the way I understood it.

The court went on to note that "[t]he idea that I thought was being accomplished, and I finally came to belief [sic], and perhaps incorrectly, was that this was a reason why the cases were being dismissed, is because it was in order to preserve the right of appeal on evidentiary rulings." Plaintiffs' counsel represented to the court that

> it was never our intent to move for a dismissal. Our intent was to do the minimum necessary to have a default or an involuntary dismissal entered against us. That's what I think everybody believed we were doing at the time. We certainly intended to preserve our right to appeal that.

The court heard further argument and stated:

> Frankly, I didn't think much about the nature of the dismissals in either the *Coursen* or the *Cook* cases. There was no question in my mind but what the word involuntary was used.... I attach no significance to it at all. It did then, and it does now, seem kind of funny for somebody to say, "I voluntarily request an involuntary dismissal." Does that make it voluntary? I don't know.

Plaintiffs' counsel responded:

> The label is not so important as the question of whether Ms. Coursen and Ms. Cook had a chance to appeal the evidentiary rulings that were applied to their

cases without having to go forward with putting the evidence in open court.....

The district court entered an order correcting the minute entry recharacterizing the dismissals in *Cook* and *Coursen* as voluntary dismissals *with prejudice* and costs awarded to the defendant. Judgments in both cases were then entered which stated that "this action is dismissed with prejudice and with costs to defendant." Appellants filed a notice of appeal with respect to this judgment.

■ Rulings on *in limine* motions are not final appealable orders under 28 U.S.C. § 1291. *Cf. Bradshaw v. Zoological Society of San Diego,* 662 F.2d 1301, 1305 (9th Cir.1981) (order denying appointment of counsel was final under section 1291). While interlocutory appeals are available for a limited number of orders which do not finally determine the merits of an action, 28 U.S.C. § 1292(b); *see, e.g., United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 369–71 (9th Cir.) (orders which, while technically not final, effectively and finally determine parties' rights are appealable), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982); *Gough v. Perkowski,* 694 F.2d 1140, 1145 (9th Cir.1982) (order disqualifying counsel is effectively nonreviewable absent interlocutory appeal), no interlocutory appeal of a pretrial ruling on the admissibility of evidence is available. *Pollock & Riley, Inc. v. Pearl Brewing Co.,* 498 F.2d 1240, 1246 (5th Cir.1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1427, 1429, 43 L.Ed.2d 673 (1975); *Virginia National Bank v. Commonwealth of Virginia,* 448 F.2d 425, 428 (4th Cir.1971); *cf. Howfield, Inc. v. United States,* 409 F.2d 694, 696 (9th Cir.1969).

The rationale underlying the denial of a right to appeal *in limine* rulings is obvious. *In limine* rulings are by their very nature preliminary. It is impossible to determine whether the movant will be prejudiced by such ruling absent a trial, a ruling in the context of trial, and the return of a verdict. *Cf. United States v. Luce,* — U.S. —, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984) (since defendant did not testify, any possible prejudice flowing from *in li-*mine ruling on use of a prior conviction for impeachment purposes is wholly speculative); *Merino v. Hocke,* 324 F.2d 687, 689 (9th Cir.1963) (a litigant may not appeal each adverse evidentiary ruling).

The difficulties inherent in an interlocutory review of an *in limine* ruling are apparent in this case. We have no way of knowing what sexual history evidence would have been offered at trial. While in other related cases, the trial court, almost without exception admitted sexual history evidence, we cannot assume that these appellants would have been prejudiced by such rulings in the context of their trials. We are unwilling to engage in this kind of speculation.

In this case appellants did not seek an interlocutory appeal of the *in limine* ruling but rather sought to obtain review of that ruling by moving for an involuntary dismissal with prejudice. Appellant cannot make a nonfinal order appealable by "the simple expedient of taking a voluntary nonsuit and appealing." *Kelly v. Great Atlantic and Pacific Tea Co.,* 86 F.2d 296, 297 (4th Cir.1936). Nor can the fact that the party reserves the right to appeal make appealable an order otherwise not appealable. *Evans v. Calmar S.S. Co.,* 534 F.2d 519, 522 (2d Cir.1976). The fact that the *in limine* ruling was not appealable does not resolve the issue presently on appeal. Appellants do not appeal from the *in limine* ruling itself or from the voluntary dismissal *without prejudice,* but rather from the entry of a judgment of *dismissal with prejudice and costs.*

■ While a plaintiff cannot appeal a voluntary dismissal with prejudice, he or she may appeal a dismissal with prejudice. *Nichols v. Mobile Bd. of Realtors,* 675 F.2d 671, 673 (5th Cir.1982). A plaintiff may appeal a voluntary dismissal which imposes a condition that creates sufficient prejudice in a legal sense. *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir.1976) (appealability of an order depends on its effect rather than its language); *see also Gardiner v. A.H. Robins Co., Inc.,* 747 F.2d 1180, 1186–87 (8th Cir.1984) (by attaching

material conditions to its approval of a parties' settlement and the entry of judgments of dismissal, the district court created sufficient legal prejudice to allow review).

In determining how to proceed in this matter, we have carefully considered the facts and circumstances surrounding the entry of a dismissal order in this case. We believe it is inappropriate to affirm the district court's dismissal order since appellants would be barred from obtaining any relief without ever having obtained any review. In *Williams v. Boeing Co.*, 681 F.2d 615 (9th Cir.1982), this court reinstated an appeal where a voluntary dismissal of an appeal was premised on the erroneous belief that a final appealable order had not been entered. We noted that to deny the reinstatement of the appeal would be "to preclude the possibility of any appellate review." *Id.* at 616. While not condoning counsel's lack of understanding of the rules, there was "no reason to let counsel's failure ... work to his client's detriment." *Id.*

The facts of this case present an even more compelling basis for remand for further proceedings consistent with this opinion. Here it is unclear whether the judgment of dismissal was entered because plaintiffs refused to proceed; because plaintiffs voluntarily agreed to such a dismissal; or because the trial judge, as well as the parties, was functioning under the mistaken assumption that by dismissing the action plaintiffs could obtain review of the court's evidentiary ruling. Accordingly, in the *Cook* and *Coursen* appeals, we vacate the judgment of the dismissal and remand with instructions that plaintiffs be directed to proceed to trial or have their cases dismissed.

The judgments in *Cook* and *Coursen* are VACATED, and those cases are REMANDED for further proceedings consistent with this opinion. In all other respects the judgment of the district court is AFFIRMED.

Each party to bear its own costs.