Freddie MADDOX, as Administratrix of the Estate of Donald Roy Wilson, Plaintiff-Appellant,

v.

The CITY OF LOS ANGELES, a municipal corporation, Roger M. Lewis, Evangelyn N. Nathan, Robert S. Arzuman, Timothy C. Harris, R.J. Broussard, Defendants-Appellees.

No. 85-5828.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided June 26, 1986.

Michael R. Mitchell, Los Angeles, Cal., for plaintiff-appellant.

Dick Helgeson, Los Angeles, Cal., for defendants-appellees.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

SKOPIL, Circuit Judge:

Plaintiff-appellant Freddie Maddox ("Maddox"), on behalf of the estate of Donald Roy Wilson, brought a cause of action pursuant to 42 U.S.C. § 1983. Maddox alleged the City of Los Angeles ("City") and various police officers violated the decedent's fourteenth amendment right not to be deprived of life without due process of law. Maddox also alleged two state claims; one based on negligence for wrongful death, and the other for assault and battery.

Maddox raises numerous issues on appeal. She claims the district court erred in instructing the jury (1) to consider the police officers' motivation when determining plaintiff's alleged due process violation; (2) that the standard of care for failure to provide medical care is deliberate indifference; and (3) that the police officers' failure to administer cardial pulmonary resuscitation ("CPR") is not a violation of the decedent's due process rights. Maddox also claims the district court erred in failing to instruct the jury that the police officers' violations of (1) Cal.Gov.Code § 845.6; and (2) Los Angeles Police Commission's moratorium on choke hold use are negligence per se. Further, Maddox claims the court erred in failing to instruct the jury that the decedent's pre-existing physical condition is not a proximate cause of death. Finally, Maddox claims the district court erred in excluding defendant's admission during a Police Department disciplinary proceeding that he violated the City policy by using the choke hold. Appellees claim that the appellant did not timely object to the issues raised on appeal.

We hold that, although Maddox timely objected to all the issues raised on appeal, none of the objections raised were meritorious. Therefore, we affirm.

## FACTS AND PROCEEDINGS BELOW

On July 31, 1982 the decedent Wilson was seen standing naked in the middle of a busy street by Officers Lewis and Nathan. The officers believed Wilson had taken Phencyclidine ("PCP"). When they attempted to take Wilson into custody, an altercation ensued. Wilson was finally handcuffed and placed on the floorboard of the rear seat of a police car by two other officers, Officers Arzuman and Harris. Arzuman and Harris then drove to a nearby hospital. En route to the hospital, Wilson became belligerent in the rear of the car. The officers stopped on the freeway to reposition Wilson and secure him in the rear seat. At this time, Wilson forced Officer Harris against a guardrail which overlooked a steep freeway embankment. Officer Harris feared that Wilson might push him over the guardrail and so applied a choke hold for twenty to thirty seconds. Wilson was subdued and secured in the rear of the police car.

Wilson was still for the remainder of the ride to the hospital. Officer Harris could detect Wilson's pulse while in the car. When they reached the hospital, however, Officer Harris had difficulty finding a pulse. The officers escorting Wilson to the hospital were trained to use CPR, but did not do so. Instead, Wilson was taken to the jail ward on the thirteenth floor of the hospital. There, the medical staff commenced CPR on Wilson. Wilson did not respond and was pronounced dead later that morning. The Los Angeles County Medical Examiner-Coroner ascribed death to "sudden death associated with blunt force injury to the neck, mild cardial fibrosis and scarring." Wilson also suffered from sickle cell anemia and damage to many internal organs.

Officer Harris was trained to use the choke hold at the Los Angeles Police Academy. Officers were taught to use the choke hold on a violent suspect who could possibly endanger himself or others. In May 1982, two months prior to the incident herein, the Los Angeles Police Commission imposed a moratorium on the use of the choke hold unless deadly force was called for. Officer Harris was never personally informed of the moratorium on the use of

the choke hold. Notice of the moratorium was read at a police roll call, but Officer Harris was not present.

A nine-day jury trial commenced on February 5, 1985. The jury returned a verdict in favor of the defendants, finding that none of the defendants had deprived Wilson of his life without due process of law, and that none of the defendants were negligent. Maddox filed a motion for new trial on March 11, 1985 which was denied. Maddox appeals.

## STANDARD OF REVIEW

■ When reviewing a claim of error relating to jury instructions, the court must give consideration to the entire charge as a whole to determine whether the instruction is misleading or incorrectly states the law to the prejudice of the objecting party. *Coursen v. A.H. Robbins*, 764 F.2d 1329, 1337 (9th Cir.), amended, 773 F.2d 1049 (1985); *Smiddy v. Varney*, 665 F.2d 261, 265 (9th Cir.1981), cert. denied, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). See also *United States v. Marabelles*, 724 F.2d 1374, 1382–83 (9th Cir.1984) (standard of review claimed in a criminal charge); *Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094, 1098–99 (9th Cir.1981) (failure to give a requested instruction is not reversible error so long as the trial judge gives adequate instructions on each element of the case).

■ Trial court rulings on the admissibility of evidence are reviewed for abuse of discretion. *M.A.P. Oil Co., Inc. v. Texaco, Inc.*, 691 F.2d 1303, 1310 (9th Cir.1982). A reviewing court will not reverse for an abuse of discretion unless it has a definite and firm conviction that the court below committed an error. See *Potlatch Corp. v. United States*, 679 F.2d 153, 157 (9th Cir. 1982).

## DISCUSSION

### A. Timeliness of Objections.

The City asserts that Maddox failed to timely object to the instruction on the standard to provide medical care, the proposed instruction on negligence per se, the pro-

posed instruction incorporated in the special verdict on proximate cause of death, and the exclusion of evidence regarding a police disciplinary proceeding.

The jury was instructed over a two-day period with the bulk of instructions read on the first day, followed by counsels' closing argument and the final jury instructions on the second day. Maddox did not object to some of the instructions until the second day, but before the jury was given its final instructions. Fed.R.Civ.P. 51 states that, "... no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ Maddox's counsel timely objected to the court's instruction that the standard of care for failure to provide medical assistance was deliberate indifference, stating his belief that the appropriate standard was negligence. Although his objection was raised after the first day of jury instructions, it is timely under Fed.R.Civ.P. 51 because it was raised before the jury retired to consider its verdict.

Maddox timely requested a negligence per se instruction based upon Cal.Gov.Code § 845.6. Although Maddox's counsel initially failed to include an instruction based on Cal.Gov.Code § 845.6 in his proposed instructions, the issue was brought to the court's attention before any jury instructions were read. Before the jury retired to consider its verdict, Maddox's counsel also proposed a revised jury instruction which incorporated the negligence per se instruction.

■ Maddox's counsel also made clear to the court at a side bar discussion that Officer Harris' admission to violating City policy with respect to the moratorium on the use of choke holds was relevant and probative as to defendant Harris. Maddox's counsel objected to the exclusion of this evidence. He made the substance of the evidence and his theory of admissibility apparent to the district court. Therefore,

the exclusion of the evidence is reviewable on appeal. See *Coursen,* 764 F.2d at 1333; Fed.R.Evid. § 103(a)(2).

■ Finally, Maddox's counsel timely objected to the failure to give an instruction on proximate cause and the "thin-skulled plaintiff." Maddox's counsel requested an instruction or special verdict inquiry on this matter before any jury instructions were read and before the special verdict was submitted to the jury. See Fed.R.Civ.P. 49(a) ("If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury"). This objection was timely.

### B. Merits of Objections.

#### 1. State of Mind Instruction

Maddox claims the jury was erroneously instructed to consider the defendant's "state of mind" in determining if the defendants violated the decedent's fourteenth amendment due process rights. Specifically, the court instructed the jury that

> In determining whether the police officers crossed the constitutional line and violated the plaintiff's civil rights by using or not using as the case may be unreasonable force, you, in applying your judgment, should consider among other factors the amount of force used in relationship to the apparent need presented, the extent of the injury intended to be actually inflicted, and whether the motive of the officer was to exact punishment rather than arrest the defendant for trial.
>
> When determining the constitutional due process line has been crossed, [sic] you may use state law as a guide to form your decision under the vaguer constitu-

tional standard. For example, state and local rules about the reasonable use of force and the officer's knowledge of them may reflect on your judgment of the motive of an officer.

Maddox argues that this instruction is erroneous because the correct standard to determine whether defendant violated the decedent's due process rights under 42 U.S.C. § 1983 is negligence.

■ Maddox's argument fails. In *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon,* — U.S. ——, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), the Supreme Court recently held that mere negligent conduct of a person acting under the color of state law may not be enough to state a claim under section 1983. *Daniels* and *Davidson* overruled *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) to the extent that *Parratt* states that, "mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Daniels,* 106 S.Ct. at 665. Thus, negligent conduct by the state official is not enough to state a claim under section 1983 based on an alleged violation of the fourteenth amendment due process clause. See also *Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979) ("The question of whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations"). Under *Daniels* and *Davidson,* the court's instruction in this case was not in error.[1]

Maddox's argument fails for another reason. Even prior to the recent decisions in *Daniels* and *Davidson,* it was established

---

1. The *Daniels* and *Davidson* cases arguably present an issue of retroactive application of new law, since *Daniels* and *Davidson* were decided after Maddox commenced this section 1983 action. See *Chevron Oil v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Since the result we reach would be the same

whether or not *Daniels* or *Davidson* overruled *Parratt's* holding that simple negligence may be sufficient to establish a fourteenth amendment due process violation, we decline to decide the difficult issue of whether *Daniels* and *Davidson* should be applied retroactively.

that section 1983 contains no state of mind requirement independent of that necessary to state a violation of the underlying constitutional right. *Parratt*, 451 U.S. at 534–35, 101 S.Ct. at 1912–13. This aspect of *Parratt* predates and survives the recent decisions in *Daniels* and *Davidson*. *Daniels*, 106 S.Ct. at 664.

In this case Maddox alleged the defendant officers deprived the decedent of life and liberty without due process when they applied a choke hold. State and local laws, which define when a police officer may use a choke hold, bear on the inquiry of whether, as a matter of federal constitutional and statutory law, the decedent was deprived of life or liberty without due process. Specifically, the Los Angeles Police Commission limits use of the choke hold unless death or serious bodily injury is threatened. Determining whether an officer on the scene is justified in applying a choke hold requires the evaluation of a number of factors. The officer's state of mind is certainly relevant to his evaluation of the urgency of the situation, the threat posed by the defendant to himself and others, the threat the defendant poses to the officers, and the need for the amount of force applied. See *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.1980) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)) (the constitutionality of the use of a choke hold on a prisoner depended upon "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981); see also *Tennessee v. Garner*, — U.S. ——, 105 S.Ct. 1694, 1699–1701, 1703–06, 85 L.Ed.2d 1 (1985) (applying a balancing test to determine if seizure obtained by use of deadly force was constitutionally reasonable; considering also the rules in individual states and police departments).

■ In this case the jury instructions allowed the jury to refer to state and local laws concerning when a choke hold may be reasonably used to determine whether plaintiff was deprived of his right to life or liberty without due process. It was also not error for the court to instruct the jury that if the officer's state of mind was such to inflict punishment or injury in excess of the need presented, then local rules regarding the application of the choke hold would have been violated, and the decedent may have been deprived of his fourteenth amendment due process rights. Assessing the jury instructions as a whole, we cannot conclude that they were in error.

### 2. Deliberate Indifference Instruction

Maddox claims the district court misstated the law when it instructed the jury,

> [w]ith respect to medical care, the concept of due process of law requires the officers to take reasonable steps to secure medical care which they recognize as necessary for the decedent. The constitutional rights of the decedent are violated if the officers are deliberately indifferent to the necessity of medical care for the decedent. However, any failure by the officers themselves to render cardial pulmonary resuscitation is not a violation of the decedent's constitutional rights.

■ Because Wilson was a pretrial detainee and not a convicted prisoner at the time of the claimed wrongful act, Maddox's section 1983 action arises under the due process clause of the fourteenth amendment and not the eighth amendment prohibition against cruel and unusual punishment. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986). While a convicted prisoner's eighth amendment rights are violated if prison personnel are deliberately indifferent to the prisoner's serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), Maddox claims the court erred in instructing the jury that the deliberate indifference

standard applies when the decedent was a pretrial detainee.

Although Maddox's claim arises under the fourteenth amendment due process clause, pretrial detainees' due process rights are at least as great as the eighth amendment protections available to convicted prisoners. *Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Jones,* 781 F.2d at 771. While the Court in *Revere* declined to define the standard of care for alleged deprivation of medical care in the due process context, it specifically found that "[w]hatever the standard may be, [the City] fulfilled its constitutional obligation by seeing that [the injured plaintiff] was taken promptly to a hospital that provided the treatment necessary for his injury." *Revere,* 463 U.S. at 245, 103 S.Ct. at 2983.

In this case the district court instructed the jury that, "constitutional rights of the decedent are violated if the officers are deliberately indifferent to the necessity of medical care for the decedent." The court further instructed the jury that the decedent's due process rights were violated if the defendant officers failed to take reasonable steps to secure medical care.

We need not decide the precise standard which applies in determining whether a city fulfills its due process obligations to pretrial detainees who require medical attention. Here, as in *Revere,* the jury could reasonably have concluded that the defendant police officers fulfilled their obligation under the due process clause when they promptly took the defendant to the hospital to obtain medical care. We therefore conclude that taken as a whole the district court's instructions concerning the deprivation of medical care were adequate.

### 3. CPR Instruction

Maddox claims the district court erred when it instructed the jury that, "any failure by the officers themselves to render cardial pulmonary resuscitation is not a violation of the decedent's constitutional rights." Maddox claims the fourteenth amendment due process clause requires officers to render CPR when a pretrial detainee in their custody is in need of CPR.

The due process clause requires responsible governments and their agents to secure medical care for persons who have been injured while in police custody. *Revere,* 463 U.S. at 244, 103 S.Ct. at 2983. We have found no authority suggesting that the due process clause establishes an affirmative duty on the part of police officers to render CPR in any and all circumstances. See *Cartwright v. City of Concord,* 618 F.Supp. 722, 729 (N.D.Cal.1985) (five to seven minute delay in starting CPR on prisoner found hanging in jail cell did not result in § 1983 liability). But cf. *Bass by Lewis v. Wallenstein,* 769 F.2d 1173 (7th Cir.1985) (prison doctor's delay in reacting to cardiac arrest was a basis for a § 1983 claim). Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital. *Revere,* 463 U.S. at 245, 103 S.Ct. at 2983.

The district court's CPR instruction must be read in the context of the court's entire instruction on the duty to secure medical care for the injured detainee. When read in conjunction with the court's instruction that, "the concept of due process of law requires the officers to take reasonable steps to secure medical care which they recognize as necessary for the decedent," the instruction at issue set forth the constitutional obligation of the officers in this case. We find no error.

### 4. Negligence **Per Se** Instruction

Maddox claims the district court committed reversible error in failing to instruct the jury that violations of Cal.Gov. Code § 845.6 and the Los Angeles Police Commission's moratorium on the use of the choke hold were negligence per se. Maddox's claim is without merit. As we have

already noted, ordinary concepts of negligence are not necessarily applicable in a section 1983 claim based upon an alleged fourteenth amendment due process violation. See *Daniels*, 106 S.Ct. at 665 and discussion at p. 1413 supra. Even assuming, arguendo, that negligence concepts are applicable in this case, we cannot conclude that the district court did not adequately instruct the jury on the significance of violating Cal.Gov.Code § 845.6 and the moratorium in determining whether the officers were guilty of misconduct.

With respect to the officer's alleged negligence in the use of the choke hold, the court instructed the jury that,

> In determining whether the police officers crossed the constitutional line and violated the plaintiff's civil rights by using or not using as the case may be unreasonable force, you, in applying your judgment, should consider among other factors the amount of force used in relationship to the apparent need presented, the extent of the injury intended to be actually inflicted, and whether the motive of the officer was to exact punishment rather than arrest the defendant for trial.
>
> When determining the constitutional due process line has been crossed, you may use state law as a guide to form your decision under the vaguer constitutional standard. For example, state and local rules about the reasonable use of force and the officer's knowledge of

them may reflect on your judgment of the motive of an officer.

This instruction properly directed the jury's attention to the reasonableness of the officer's conduct in using the choke hold in determining whether the decedent's due process rights were violated. While the court did not use the exact language of the Los Angeles City moratorium, a plaintiff is not necessarily entitled to an instruction using specific words provided the instruction given adequately covers the issue before the jury. Here, the instruction was adequate.

With respect to medical care and the alleged violation of section 845.6, the jury was instructed that,

> [t]he concept of due process of law requires the officers to take reasonable steps to secure medical care which they recognize is necessary for the decedent. The constitutional rights of the decedent are violated if the officers are deliberately indifferent to the necessity of medical care for the decedent. However, any failure by the officers themselves to render cardial pulmonary resuscitation is not a violation of the decedent's constitutional rights.

The instruction adequately reflects Cal. Gov.Code § 845.6's mandate imposing civil liability when a public employee knows or has reason to know that the person is in need of immediate medical care and he fails to take reasonable steps to summon such care.[2]

**2.** It is unclear whether Maddox sought the negligence *per se* instructions with respect to the section 1983 claim or the pendent state claims. As noted, the jury instructions on Maddox's section 1983 claim adequately cover the issue of the officers' alleged misconduct resulting from alleged violations of section 845.6 and the moratorium on the use of the choke hold. With respect to the state negligence claim, the jury was instructed that,

> Thus the plaintiff is entitled to findings in this case if you find in accordance with my instruction that a defendant was negligent; and, (2) that such negligence was a proximate cause of injury or death to Donald Wilson.
>
> Negligence is the doing of something which a reasonably prudent person would not do or the failure to do something which a reason-

ably prudent person would do under circumstances similar to those shown by the evidence. It is the failure to use ordinary or reasonable care.

> Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. Ordinary care is not an absolute term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances as shown by the evidence in the case. The amount of caution required of a person in the exercise of ordinary care depends upon the condition apparent to that person or that should be apparent to a reasonably prudent person under circum-

■ Maddox also apparently argues that she was entitled to a presumption instruction pursuant to Cal.Evid.Code § 669, which provides that a person who violates a statute, ordinance, or regulation of a public entity is presumed negligent. Cal.Evid. Code § 669(a)(1). In order for the section 669 presumption to operate, the jury first would have been required to find that the defendant officers violated Cal.Gov.Code § 845.6 or the Los Angeles Police moratorium.[3] The court's failure to instruct the jury that the police officers should be presumed negligent if they were found to violate a state statute cannot be prejudicial error in this case because of the jury's specific finding that the police officers' conduct was reasonable under the circumstances and, therefore, not in violation of Cal.Gov.Code § 845.6 or the Los Angeles Police moratorium. Any failure to give a presumption instruction could not have affected the verdict. See *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977) (nonconstitutional errors generally are measured against the more probable than not standard).

## C. Admissibility of Evidence.

Maddox sought to introduce evidence that during a Police Department disciplinary proceeding defendant Officer Harris admitted to violating the City policy on use of the choke hold. The district court found this evidence was inadmissible under Fed. R.Evid. § 403 because its prejudicial effect outweighed its probative value. The court also found this evidence inadmissible because the disciplinary proceeding constituted a remedial measure within the meaning of Fed.R.Evid. § 407. We review the trial court's ruling on the admissibility of evi-

dence for abuse of discretion. *M.A.P. Oil,* 691 F.2d at 1310.

■ The Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident. Pursuant to Fed.R.Evid. § 403, evidence of these proceedings was therefore properly excluded with respect to the City's liability. See *Boeing Airplane Co. v. Brown,* 291 F.2d 310, 315 (9th Cir.1961) (subsequent remedial measures are inadmissible with regard to the issue of prior negligence); *Luera v. Snyder,* 599 F.Supp. 1459, 1463 (D.C.Col.1984) (testimony of changes in police department's policies are inadmissible as evidence of a subsequent remedial measure); Fed.R.Evid. § 407.

■ With regard to Officer Harris' liability, the district court did not abuse its discretion in excluding this evidence pursuant to Fed.R.Evid. § 403. This evidence arguably had little probative value. There was substantial evidence before the jury concerning the reasonableness of the officer's conduct in relation to the Los Angeles Police Commission's moratorium on choke hold use. For example, evidence went to the jury regarding the Police Department standards and training on choke hold use, including the fact that the Department had issued a moratorium on choke hold use except in life-threatening situations.

The prejudicial effect of this evidence was also arguably great. The jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings. The jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence. Although this

---

stances similar to those shown by the evidence.

This instruction properly sets forth the concept of negligence under state law. We cannot conclude that the jury was not fairly instructed on Maddox's pendent state claims.

**3.** We note that *Peterson v. City of Long Beach,* 155 Cal.Rptr. 360, 594 P.2d 477, 24 Cal.3d 238 (1979), which held that local rules or regulations setting forth standards of conduct for police officers in the use of deadly force are con-

sidered a statute or regulation of a public entity within the meaning of Cal.Evid.Code § 669 has been statutorily overruled by Cal.Evid.Code § 669.1. However, section 669.1 is not applicable to the present case. Section 669.1's application is limited to causes of action arising out of facts occurring on or after January 1, 1984. Since Maddox's case arose out of facts occurring before January 1, 1984, the holding in *Peterson* would apply.

evidentiary issue presents a close question, this court's job is not to reengage in a balancing of the probative value and prejudicial effect. See *Longenecker v. General Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir.1979) ("The Rule 403 weighing process is primarily for the district court to perform"). We are limited in our review to determination of whether the district court abused its discretion when it engaged in the balancing process. *Id.* Upon review of all the circumstances in this case we find no abuse of discretion. *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir.) (district court is accorded wide discretion in deciding whether to admit evidence under Rule 403), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981).

**D. Proposed Special Verdict.**

 Maddox sought an instruction in her proposed special verdict directing the jury to find the defendants liable even if the defendants only aggravated a pre-existing physical condition that resulted in injury or death. The district court need not give every instruction proposed by counsel so long as the instructions adequately cover each element of the case. *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 774 (9th Cir.1984). Examination of the court's special verdict form reveals that it adequately addressed all the issues in the case.

 The court instructed the jury that,

Thus the plaintiff is entitled to findings in this case if you find in accordance with my instruction that a defendant was negligent; and, (2) that such negligence was a proximate cause of injury or death to Donald Wilson.

Negligence is the doing of something which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under circumstances similar to those shown by the evidence. It is the failure to use ordinary or reasonable care.

In addition, the special verdict form asked the jury to determine whether any of the defendants were negligent and, if so, whether this negligence was a proximate cause of the decedent's death. The jury instructions coupled with the special verdict adequately set forth the principles of negligence and proximate cause.

 Even assuming Maddox was entitled to the requested thin-skulled plaintiff instruction or some variation thereof, the failure to give this instruction is not reversible error in this case. The jury found that none of the defendants were negligent. It specifically found the defendants' conduct was reasonable. The jury therefore was never required to decide the issue of proximate cause of death. Any alleged error in failing to instruct the jury about pre-existing conditions and the proximate cause of death cannot be a basis for reversal since the jury found the defendants' conduct to be reasonable under all circumstances. See *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir.1983) (error in civil trial must more probably than not taint the jury's verdict to constitute reversible error).

**AFFIRMED.**