133 F.3d 926
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Janet COLLIER; Daniel Collier; Sarah Collier; Jim Thomas;
Paula Thomas; Robert Thomas, Clifford James Thomas, Jr.;
Mark Cardenas; Nancy Coonfield; Mathew Cardenas, Bill
Nachreiner; Sherry Nachreiner; Greg Nachreiner; Joseph
Nackreiner; Mark Nackreiner; Dorothy Nackreiner; Dorothy
Nackreiner; Tom Stripling; Linda Striling; Ian Stripling;
Evan Stripling; Linda Stripling; Ron Heller; Joyce
Heller; Tracey Heller; Troy Heller; Amber Heller,
Plaintiffs-Appellants,
v.
SIMPSON PAPER COMPANY, Defendant-Appellee.
 No. 97-15101.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1997.
Decided Dec. 24, 1997.
 MEMORANDUM*
 
 1
 Janet Collier and her neighbors (collectively, "Appellants") live near the Dersch Road Landfill ("Landfill"), which is owned by Appellee Simpson Paper Company ("Simpson"). Fearing that they were being harmed by chemicals deposited in the Landfill, Appellants filed a diversity action against Simpson. After conducting extensive discovery, Simpson filed a motion for summary judgment, which the district court granted. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 2
 We review de novo a grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). Summary judgment is appropriate only if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence" is not sufficient to overcome a motion for summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). Rather, the plaintiff must present sufficient evidence to establish the existence of every element on which he will bear the burden of proof at trial. River City Mkts. v. Flemming Foods West, 960 F.2d 1458, 1462 (9th Cir.1992).
 
 
 3
 Appellants' complaint lists causes of action for nuisance, trespass, negligence, negligence per se, fear of cancer, and intentional infliction of emotional distress. We address each claim in turn.
 
 A Nuisance
 
 4
 Appellants allege that chemicals in the Landfill caused water pollution and soil contamination, thereby giving rise to their claim for nuisance. California law defines a nuisance as "[a]nything which is injurious to health, ..., or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ.Code § 3479 (West 1997). To recover for nuisance, a plaintiff must establish the existence of an interference that substantially and unreasonably affects the use and enjoyment of her property. Koll-Irvine Ctr. Property Owners Ass'n v. County of Orange, 24 Cal.App. 4th 1036, 1041-42 (1994). A private nuisance action cannot be based solely upon a fear of future injury. Id.
 
 
 5
 Appellants contend that toxic chemicals have migrated radially from the Landfill to the domestic water supply, to the groundwater, and onto their property. Nonetheless, Appellants have submitted insufficient evidence to survive Simpson's motion for summary judgment. For example, to support their position that toxins have contaminated their domestic water supply, Appellants rely upon a technical report prepared by CH2M Hill documenting the presence of dioxin in tap water samples taken from the domestic water supply serving two of Appellants' homes. The levels found by the CH2M Hill report, however, were at levels well below the minimum quantification levels established by the EPA. Moreover, further studies revealed no dioxins in the tap water. Appellants have obtained no soil samples or water samples to show the presence of dioxins in the groundwater underlying their properties. As such, the report relied upon by Appellants to establish contamination provides a mere scintilla of evidence that cannot suffice to overcome Simpson's motion for summary judgment. See Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986) (noting that the presentation of a mere scintilla of evidence cannot defeat a motion for summary judgment).
 
 
 6
 Appellants' claim that chemicals have migrated from the Landfill to contaminate the groundwater is likewise insufficient to overcome Simpson's motion for summary judgment. To support their position that chemicals have contaminated the groundwater, Appellants rely upon a memorandum prepared by Barbara Renzi, an femployed at the California Department of Toxic Substances Control ("Renzi Memorandum"). The Renzi Memorandum merely states that volatile organic chemicals ("vocs") "may migrate to groundwater under certain conditions." Contrary to Appellants' position, the Renzi Memorandum does not state that such migration has occurred, or that the groundwater is presently contaminated with vocs. As such, Appellants' position that toxins have migrated to and groundwater, and that the groundwater is of excellent quality.
 
 
 7
 On the other hand, Simpson has provided ample evidence showing that synthetic compounds are not detectable in the groundwater, and that the groundwater is of excellent quality. For example, the California Regional Water Quality Control Board for the Central Valley Region ("Regional Water Board") required Simpson to submit regular groundwater monitoring reports. Based on such reports, the Regional Water Board found no evidence of groundwater contamination. Likewise, the EPA found no harmful chemicals to be present in the groundwater. In addition, Simpson hired a technical consultant to evaluate the groundwater on a semi-annual basis. The consultant consistently found the groundwater to be of excellent quality. Moreover, according to the testimony of Dr. Adrian Brown, an experienced hydrologist, groundwater flows away from Appellants' property. Consequently, any toxins in the groundwater would not damage either Appellants' property or their domestic water wells.
 
 
 8
 Appellants' claim that toxic chemicals have invaded their properties through surface water migration is similarly insufficient to defeat summary judgment. Although there is a factual dispute as to whether the surface water may have flowed toward Appellants' property, there is no evidence that toxic chemicals in fact reached or affected their property. In fact, Simpson has provided uncontroverted expert testimony from Dr. George Tchobangolous to establish that storm water runoff would not be a significant pathway for surface contamination of Appellants' property.
 
 
 9
 Because Appellants have provided only a mere scintilla of evidence to show that any chemical migrated from the Landfill or affected the use and enjoyment of their property, the district court did not err in granting Simpson's motion for summary judgment on Appellants' nuisance claim.
 
 B. Trespass
 
 10
 To recover for trespass, Appellants must prove an unpermitted invasion of their land that resulted in physical damage to their property. See, e.g., E.H. Wilson v. Interlake Steel Co., 32 Cal.3d 229, 230-33 (1982). As described above, Appellants have not shown that Landfill chemicals actually invaded their property, either above or below ground. Accordingly, the district court did not err in granting summary judgment on Appellant's claim for trespass.
 
 C. Negligence
 
 11
 To establish that Simpson was negligent, Appellants must show that: 1) Simpson owed Appellants a legal duty; 2) Simpson breached that duty; and 3) Simpson's breach proximately caused Appellants to sustain injuries. See, e.g., Ann M. v. Pacific Plaza Shopping Ctr., 6 Cal.4th 666, 673 (1993).
 
 
 12
 Appellants argue that Simpson breached its duty of due care by placing waste on the edge of the trenches for an extended period of time, and by failing to investigate the possibility of using trench liners to prevent the migration of harmful chemicals onto Appellants' property. On the other hand, Simpson maintains that the Landfill was operated and maintained in a careful and lawful fashion. Simpson further contends that its conduct did not proximately cause Appellants to sustain any injuries.
 
 
 13
 We find Simpson's position to be convincing. First, Appellants have not shown that Simpson breached its duty of due care. Simpson was required to provide a level of care "which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence." Maddox v. City of Los Angeles, 792 F.2d 1408, 1416 n. 2 (9th Cir.1986). The parties dispute whether or not Simpson deposited potentially harmful chemicals in the Landfill. Nonetheless, Simpson operated and maintained the Landfill in a careful manner, complying with all relevant government regulations and permits. For example, Simpson regularly submitted groundwater monitoring reports to the California Regional Water Quality Control Board for the Central Valley ("Water Control Board"), which found no evidence indicating that the Landfill had affected the groundwater. Further, the United States Environmental Protection Agency ("EPA") conducted detailed assessments of the Landfill to determine whether Simpson had adequately addressed environmental concerns. After compiling and reviewing data regarding conditions at the Landfill, the EPA concluded that the Landfill posed no significant threat to human health or to the environment, and that Simpson was not required to complete any remedial work. Thus, there is no indication that Simpson breached its duty of due care.
 
 
 14
 Even if Simpson had breached its duty of due care, Appellants have not demonstrated that such a breach proximately caused them to sustain any injuries. Appellants have not established that any harmful chemicals either migrated onto their property or infected the groundwater supply. Nor have Appellants shown that they are currently exhibiting medical symptoms due to the presence of harmful chemicals in the Landfill. Further, Appellants have not provided any evidence to show that they are likely to suffer medical harm in the future.
 
 
 15
 Thus, Appellants have not established that they have sustained any damage proximately caused by Simpson's maintenance, operation, or closing of the Landfill. Accordingly, the district court: did not err in granting Simpson's motion for summary Judgment on Appellants' cause of action for negligence.
 
 D. Negligence per se
 
 16
 To establish negligence per se, Appellants must show that: 1) Simpson violated a statute, ordinance, or regulation; 2) the violation proximately caused injury; 3) the injury resulted from an occurrence that the statute was designed to prevent; and 4) Appellants are within the class of persons for whose protection the statute, ordinance, or regulation was adopted. See Cal. Evid.Code § 669 (West 1997); Newhall Land and Farming Co. v. Superior Court, 19 Cal.App. 4th 334, 347 (1993).
 
 
 17
 In the case at bar, Appellants claim that Simpson violated: 1) the Toxic Substances Control Act, 15 U.S.C. § 2601; 2) the Resource Conservation and Recovery Act, 49 U.S.C. § 6901; 3) the Hazardous Waste Control Act, California Health & Safety Code § 25100; and 4) the Toxic Pits Clean-up Act of 1984, California Health & Safety Code § 2528.
 
 
 18
 The district court found that because Appellants failed to provide any evidence showing that they had been exposed to harmful chemicals, Appellants' claim for negligence per se must fail. We agree. Further, Appellants have not provided any evidence suggesting that Simpson violated any of the above statutes. Nor have Appellants shown that they suffer from any injuries due to Simpson's allegedly unlawful behavior. Accordingly, the district court did not err in granting summary judgment in favor of Simpson on Appellants' claim for negligence per se.
 
 
 19
 E. Tortious Inducement of Fear of Contracting Cancer
 
 
 20
 In the present case, no Appellant has been diagnosed with either cancer or a pre-cancerous condition. Given the absence of physical injury or illness, Appellants may only recover for fear of contracting cancer if: 1) due to Simpson's negligence, Appellants were exposed to a toxic, cancer-causing substance; and 2) Appellants fear cancer based on the knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the Appellants will develop cancer in the future due to the toxic exposure. See Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 997 (1993).
 
 
 21
 Under the standard outlined in Potter, Appellants' claim for tortious inducement of fear of contracting cancer must fail for a number of reasons. First, as described above, Appellants have not shown that Simpson acted negligently in operating or maintaining the Landfill. Second, while toxic chemicals are located within the Landfill, Appellants have not shown that they were actually exposed to such chemicals.
 
 
 22
 Third, no Appellant has been told that it is more likely than not that he might get cancer due to exposure to chemicals in the Landfill. Appellants claim that the testimony of Dr. Legator corroborates their fear of contracting cancer. Dr. Legator, however, did not state that it is more likely than not that Appellants will actually contract cancer. Rather, Dr. Legator stated that Appellants "have been put at risk of developing" cancer due to exposure to chemicals in the Landfill. Simpson, on the other hand, has provided the testimony of several experts who believe that any possible exposure to chemicals from the Landfill would have been too low to cause any adverse effect such as cancer.
 
 
 23
 In short, because Appellants have not shown that it is more likely than not that they will contract cancer due to Simpson's negligence, the district court did not err in granting Simpson's motion for summary judgment on Appellants' tortious inducement of fear of contracting cancer claim.
 
 
 24
 F. Intentional Infliction of Emotional Distress
 
 
 25
 To recover for the intentional infliction of emotional distress, Appellants must prove: 1) extreme and outrageous conduct by Simpson with the intention of causing, or with the reckless disregard for the probability of causing, emotional distress; 2) that they suffer from severe or extreme emotional distress; and 3) that Simpson's conduct actually and proximately caused their distress. Potter, 6 Cal.4th at 1001. To be considered outrageous, a defendant's conduct must be "so extreme as to exceed all bounds of that usually tolerated by a civilized community." Id. Because whether a defendant's conduct was extreme and outrageous is ordinarily a question for the jury, we may grant summary judgment only if no reasonable jury would find Simpson's conduct to have been so extreme and outrageous as to warrant recovery. See Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989).
 
 
 26
 Appellants allege that Simpson exhibited extreme and outrageous conduct by failing to use liners in the trenches at the landfill and by placing sludge on the side of the trenches. As a matter of law, however, Simpson's conduct simply was not extreme or outrageous. Several regulatory agencies conducted inspections of the Landfill and found that Simpson had materially complied with all use permits. While Appellants argue that Simpson should have investigated the possibility of using trench liners, the failure to do so simply does not constitute extreme or outrageous conduct. As such, the district court correctly granted summary judgment in favor of Simpson on Appellants' intentional infliction of emotional distress claim.
 
 
 27
 For the reasons above, the district court did not err in granting summary judgment in favor of Simpson and dismissing Appellants' complaint.
 
 
 28
 AFFIRMED.
 
 
 
 **
 The Honorable Thomas Zilly, United States District Judge for Western Washington, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3